UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE FORTUNE SOCIETY, INC.

            Plaintiff,

v.

SANDCASTLE TOWERS HOUSING
DEVELOPMENT FUND CORP.,
SARASOTA GOLD LLC, E & M
ASSOCIATES LLC, WEISSMAN REALTY
GROUP LLC,

            Defendants.

---

Civil Action No.: 1:14-cv-6410

Magistrate Judge Vera M. Scanlon

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT, TO PRECLUDE THE EXPERT REPORTS AND TESTIMONY OF DR. ALAN PARNELL AND TO STRIKE PORTIONS OF THE AMENDED COMPLAINT AND IN OPPOSITION TO VARIOUS APPLICATIONS FILED BY PLAINTIFF

Dated: New York, New York
       September 28, 2016

_____
Thomas D. Shanahan (TS-3330)
Thomas D. Shanahan, P.C.
551 Fifth Avenue, Suite 616
New York, New York 10176
(212) 867-1100, x11
tom@shanahanlaw.com

## Table of Contents

Prior Convictions Are Bona-Fide Criterion for Tenant Selection...........................1
Summary Judgment is Appropriate on All Claims Pursuant to 42 U.S.C. §3604.....6
The Declaration of Donald Welsch Is Proper In All Respects................................9
Conclusion..............................................................................................................10

## Table of Citations

### Cases

Alexander v. Edgewood Mgm't Corp., No. 15-01140, at 4, 6 (D.D.C. July 25, 2016) ........................................................................................................2, 5, 6
Boston Chapter N.A.A.C.P. Inc. v. Beecher, 504 F.2d 1017, 1018-21 (1st Cir. 1974) cert. denied 421 U.S. 910, 95 S.Ct. 1561(1975).........................................4
Connecticut v. Teal, 457 U.S. 440, 451 (1982).................................................2, 3
Equal Employment Opportunity v. Freeman, 961 F.Supp.2d 783 (D.Md. 2013), affirmed sub nom, Equal Employment Opportunity v. Freeman, 778 F.3d 463, 466 (4th Cir. 2015).................................................................................4
Griggs v. Duke Power Co., 401 U.S. 424 (1971).................................................3
Havens Realty Corp. v. Coleman, 455 U.S. 363, 374 (1982) .............................8
Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 708 (1978) .........3
Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2nd Cir. 1993)............9
Ragin v. N.Y. Times Co., 923 F.2d 995, 989 (2nd Cir. 1991)................................9
Rodriquez v. Vill. Green Realty, Inc., 788 F.3d 31 (2nd Cir. 2015) .......................9
Segar v. Smith, 738 F.2d 1249, 1283-84 (D.C. Cir. 1984), cert. denied, 471 U.S. 1115 (1985)..............................................................................................4, 9
Soules v. U.S. Dept. of Housing & Urban Dev., 967 F.2d 817, 822 (2nd Cir. 1992) 7
United States v. Balistrieri, 981 F.2d 916, 929 (7th Cir. 1992), cert. denied, 510 U.S. 812 1993) .................................................................................................8
United States v. Town Hall Terrace Ass'n, 1997 U.S. Dist. LEXIS 3119 (W.D.N.Y. 1997)..................................................................................................8
Waisome v. Port Auth. Of New York & New Jersey, 948 F.2d 1370, 1378 (2nd Cir. 1991) ...................................................................................................2, 3, 4

### Statutes

42 U.S.C. §3604(c)..................................................................................................8

i

### Prior Convictions Are Bona-Fide Criterion for Tenant Selection

H.U.D. specifically recognized that "resident safety and protecting property are often considered among the fundamental responsibilities of a housing provider, and courts may consider such interests to be both substantial and legitimate." See Exhibit GG, page 5, fn. 24. As confirmed by building demographics and the spreadsheet created by *Plaintiff's* counsel, if one prospective minority applicant is rejected for a *bona-fide* business justification, *i.e.*, criminal conviction, credit, income or landlord/tenant history, an available apartment will almost always inevitably go to another *otherwise qualified* minority applicant.

For the reasons contained in Defendants' opposition brief dated September 14, 2016, pages 29-30, we respectfully submit that we have sufficiently demonstrated that the subjective consideration of prior criminal convictions is a *legitimate criterion,* given a landlord's obligation to ensure a safe building for existing tenants. Plaintiff continues to assert that we "have proffered no evidence showing a legitimate justification." See Plaintiff Opp. Brief, page 33. This is simply untrue and is rebutted by the record. See Verified Answer, Exhibit G, ¶¶57, 61, 68, 70, 71, 77, 79, Answers to Interrogatories, see Exhibit FF, Interr. 9, and as evidenced by the specific offenses excluded under the Fair Housing Act, see H.U.D. Guidance, Exhibit GG, page 6.

Plaintiff incorrectly relies on Connecticut v. Teal, 457 U.S. 440, 451 (1982) ("Teal") and Waisome v. Port Auth. Of New York & New Jersey, 948 F.2d 1370, 1378 (2nd Cir. 1991) ("Waisome") and incorrectly asserts that our reliance on the racial composition of the Sandcastle is in error, as Sandcastle demographics are "irrelevant".

Plaintiff incorrectly argues:

> "[Defendant's reliance on] the fact that there are a substantial number of minority tenants…is wrong. The Supreme Court has long held that a racially-balanced end result is not a defense to disparate impact liability and has no legal relevance." See Plaintiff's Opposition Brief, page 3, citing Connecticut v. Teal, 457 U.S. 440, 451 (1982), Waisome v. Port Auth. of New York & New Jersey, 948 F.2d 1370, 1378 (2nd Cir. 1991), Alexander v. Edgewood Mgm't Corp., No. 15-01140, at 4, 6 (D.D.C. July 25, 2016).

Teal is not applicable to this case on the facts or the law. In Teal, the Supreme Court rejected an employer's defense that evidence of an integrated workforce justified allowing the employer to require, as an *absolute* condition for promotion, that employees pass a written test that was *not* job related. The Supreme Court found the written exam[1] to be an "artificial, arbitrary and unnecessary barrier" to the promotion of minority employees. Id., at 451. The Supreme Court restated its prior holding in Griggs v. Duke Power Co., 401 U.S. 424 (1971), that the paramount issue and concern, which the court described as the "touchstone", is "business necessity". Id., at 446, Griggs, 401 U.S. at 431.

Teal's holding reiterates the focus of Title VII, the Fair Housing Act and other civil rights statutes on the rights of *individuals*. The court in Teal stated:

> "It is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees group…the statute's focus on the individual is unambiguous". Id., at 455, citing Los Angeles Dept. of Water & Power v. Manhart, 435 U.S. 702, 708 (1978).

As the spreadsheet prepared by Plaintiff's counsel *confirms*, the Sandcastle engages in a case-by-case analysis, accepting those individuals it deems a good risk for becoming tenants and rejecting those it does not. See Exhibit S. As explained in Defendants' opposition brief, a review of accepted and rejected applicants contained in Plaintiff's

---

[1] The written examination at issue was a civil service test that both parties agreed had no direct relevance to the actual job duties.

2

spreadsheet confirms decision-making an on *individualized* basis consistent with the Sandcastle's obligations under the law. See Def. Opp. Brief, pages 8-10.

Waisome v. Port Auth., 948 F.2d 1370 (2nd Cir. 1991), also does not support Plaintiff's claims herein. In Waisome, as in Teal, unlawful race-based discrimination was alleged because of civil service examinations that were *unrelated* to the jobs at issue and served *no* business necessity. Id., at 1372. In Waisome, plaintiffs interposed detailed statistical evidence that confirmed the "conclusion that the observed disparities in promotion rates were related to the candidates' race." Id., at 1379. In their decision, the Second Circuit envisioned misuse of its holding[2] and included the following cautionary language: "In cases involving small or marginal samples, other *indicia* raising an inference of discrimination must be examined." Id., citing Segar v. Smith, 738 F.2d 1249, 1283-84 (D.C. Cir. 1984), cert. denied, 471 U.S. 1115 (1985), (where failure to show significance of disparity in one set of promotions is due to small sample size, evidence of other discrimination, including other promotion decisions, may suffice to show disparate impact), Boston Chapter N.A.A.C.P. Inc. v. Beecher, 504 F.2d 1017, 1018-21 (1st Cir. 1974) cert. denied 421 U.S. 910, 95 S.Ct. 1561(1975). Defendants respectfully submit that this case is among the cases with data sets too small or of dubious quality (actually, "junk science" more accurately describes the work of Dr. Parnell), that the Court must look beyond the hypothetical data set created by Dr. Parnell to determine if any inference of discrimination can be established. See Equal Employment Opportunity v. Freeman, 961 F.Supp.2d 783 (D.Md. 2013), affirmed sub nom, Equal Employment Opportunity v. Freeman, 778 F.3d 463, 466 (4th Cir. 2015), See Def. Sum. Jud. Brief, pages 10-11.

---

[2] Similar to the Supreme Court in Inclusive Communities. See Def. Opp. Brief, page 1.

The actual building demographics, census data, tenant roster prepared by Rose Campbell and Sonia Forest and the spreadsheet created by *Plaintiff's* counsel – actual data sets based upon reality rather than fiction – confirm that neither intentional discrimination nor disparate impact have occurred at the Sandcastle.  See US Census Data, Exhibit D, Tenant Roster, Exhibit E, Dec. of Campbell, Exhibit Y, Dec. of Forrest, Exhibit Z, Report of Donald Welsch, Exhibit CC, Supplemental Report of Donald Welsch, Exhibit DD, Declaration of Donald Welsch dated July 14, 2016, pages 61-63.

In its opposition brief, Plaintiff also cites the recent decision of Alexander v. Edgewood, No. 15-01140, at 4, 6 (D.D.C. July 25, 2016).  In Alexander, the court denied a rule 12(b)(6) motion to dismiss a complaint alleging disparate *treatment.* In denying the motion to dismiss, the Court held the Plaintiff, *who was pre-qualified for housing after meeting criteria set by the District of Columbia House Authority* (DCHA), stated a claim for which relief can be granted by alleging he was denied by various landlords for housing based upon a 2007 misdemeanor for which he served ten-days. Id., pages 2-3.  In its opposition brief, Plaintiff avers:

> "In fact, the first decision applying HUD's new Guidance on landlords' use of criminal records rejected this very same "bottom line" argument as "pernicious" even though the defendants' building were overwhelmingly, perhaps even 100% African American." See Pl. Opp. Br., page 3.

Defendants respectfully disagree with Plaintiff's analysis and point out that Alexander actually supports the Defendants position for a number of reasons.  First, "bottom line" *is* relevant *if* the selection criterion being applied has a legitimate business justification, *i.e.*, a subjective review of prospective tenants, to determine who does, and does not, meet the landlord's criteria.  Second, Plaintiff cannot show that any of the rejected applicants were *otherwise qualified* to reside at the Sandcastle.

4

Applying the testimony of Rose Campbell to Mr. Alexander, his prior misdemeanor conviction from seven years prior would not have resulted in his being rejected if he was otherwise qualified by reason of income, credit history and landlord-tenant litigation history. See Exhibit U, Testimony of Rose Campbell, pages 74-76, 138-143. The spreadsheet prepared by Plaintiff confirms that individuals *similarly situated* to Mr. Alexander have been accepted as tenants at the Sandcastle. This fact cannot be disputed. Id. If Mr. Alexander did not meet the additional applicant criteria, namely income, credit or landlord/tenant criteria, *all of which are legitimate business justifications to screen tenants*, the apartment would have most likely, based upon Sandcastle demographics, gone to an otherwise qualified minority applicant.

Unlike Alexander, there *is no individual plaintiff* whose qualifications can be reviewed by this court. The lack of even *one* individual plaintiff who *actually* applied for housing and was allegedly unlawfully *denied* refutes Plaintiff's factually unsupported argument of wide-spread and egregious discrimination. For example, in Alexander, the Court was able to review the timeframe between the conviction and the application for housing to determine, for purposes of a 12(b)(6) motion to dismiss, whether or not the period at issue was a "reasonable time". The District Court in Alexander held:

> "Mr. Alexander is alleging that defendants are looking at criminal histories from those years. Moreover, defendants are indeed looking to those years and denied his application of criminal activity from that precise timeframe". Id., at 7.

There is *no comparative data* from any individual plaintiff who was denied, especially those alleged 20 or so proposed Fortune Society tenants, see Carter Dec., Pl. Ex. 17, page 4, ¶11, testers or any other reliable comparative data for this Court to review. The only "comparative data" offered by Plaintiff is the self-serving, unrepresentative and fatally

5

flawed hypothetical applicant pool created by Dr. Parnell. See Def. Sum. Jud. Brief, pages 1-8. Dr. Parnell's "data" has no utility for all the reasons already stated in Defendants' prior briefs. Conspicuously absent is any data to show that the "pool members" in his sample are *otherwise qualified* to rent at the Sandcastle.

Similar to the Amended Complaint in this action, the complaint in Alexander relied on local data from specific wards in Washington, D.C., to support the allegation of disparate treatment. Id., at 7, See Exhibit F, Amended Complaint, ¶¶95-97, Press Release of Plaintiff's Counsel, Exhibit MM, page 3. The court found the plaintiff interposed sufficient *local* data from locations where the defendant's properties were actually located and had therefore sufficiently stated a cognizable claim pre-discovery. Id., at 7.

However, in this case, even after hundreds of hours of discovery and thousands of documents reviewed, *Plaintiff inexplicably chose to ignore any and all local data and rely instead on national data for incarceration (and not convictions).* See Def. Sum. Jud. Brief, pages 1, 2. It is indisputable that local data *exists* as it was cited in the Amended Complaint and Press Release sent out by counsel. Id. To date, the Plaintiff has failed to justify use of national data in the place of local statistics. See Def. Sum. Jud. Brief, pages 23-24.

## Summary Judgment is Appropriate on All Claims Under the Fair Housing Act

The record is devoid of any evidence to support a viable claim under 42 U.S.C. §3604(a).[3] To assert an actionable claim of intentional discrimination under the Fair Housing Act, 42 U.S.C. §3604(a), plaintiff must show that a member of a protected class,

---

[3] The analysis in this section applies to Second Cause of Action under the New York State Executive Law, §296(5)(a)(1), Exhibit F, Amended Complaint, ¶141(a) and the Third Cause of Action under the New York City Administrative Code and Charter, Id., ¶8-107(5)(a)(1), Exhibit F, Amended Complaint, ¶145(b).

6

*otherwise qualified to rent the housing at issue*, was rejected although the housing remained available. See Soules v. U.S. Dept. of Housing & Urban Dev., 967 F.2d 817, 822 (2nd Cir. 1992), United States v. Town Hall Terrace Ass'n, 1997 U.S. Dist. LEXIS 3119 (W.D.N.Y. 1997). It is undisputed that no clients of the Fortune Society ever submitted an application to rent an apartment at the Sandcastle. There is no evidence in the record, nor has there been any representation that any tester, or other individual working with the Plaintiff, was denied housing at the Sandcastle for the entire decade alleged in the Amended Complaint. Accordingly, summary judgment is properly granted to the Defendants on the First Cause of Action as it relates to 42 U.S.C. 3604(a). See Town Hall Terrace, *supra* at 11.

To state a *prima fac*ie case under 42 U.S.C. §3604(b), Plaintiff must demonstrate that a member of a protected class was denied the same terms, conditions or privileges of rental housing as similarly situated individuals outside of the protected class. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 374 (1982), United States v. Balistrieri, 981 F.2d 916, 929 (7th Cir. 1992), cert. denied, 510 U.S. 812 1993), see Exhibit F, Amended Complaint, ¶137(b).[4] Defendants respectfully submit that even drawing all inferences and resolving all ambiguities in favor of Plaintiff, the record is devoid of any conduct that could support a determination that minority applicants were treated *less favorably than non-minority applicants*. The subjective evaluation conducted by the Sandcastle is a legitimate business justification consistent with case law and the April 2016 HUD Guidance.

---

[4] The analysis in this section applies to Second Cause of Action under the New York State Executive Law, §296(5)(a)(2), Exhibit F, Amended Complaint, ¶141(b) and the Third Cause of Action under the New York City Administrative Code and Charter, ¶8-107(5)(a)(2), Exhibit F, Amended Complaint, ¶145(b).

To state a *prima facie* case under 42 U.S.C. §3604(c),[5] a Plaintiff must show that the defendants' notices and statements have expressed and/or continue to express a preference, limitation and discrimination based upon race and/or color.  See Rodriquez v. Vill. Green Realty, Inc., 788 F.3d 31 (2nd Cir. 2015).

The Second Circuit has interpreted this provision of the Fair Housing Act in the context of alleged race based discrimination to mean "a plaintiff could bring an action…if the defendant's [statements] suggest[ed] to an *ordinary reader* that a particular race [was] preferred or dispreferred for the *housing* in question, regardless of the defendant's intent." Id. at 17, citing Ragin v. Harry Macklowe Real Estate Co., 6 F.3d 898, 905 (2nd Cir. 1993), Ragin v. N.Y. Times Co., 923 F.2d 995, 989 (2nd Cir. 1991)(Emphasis added).

The only evidence in the record that could possibly support this claim is the incorrectly worded Craigslist advertisement, which Defendant concedes does not accurately reflect Sandcastle policy.  No "ordinary reader" of the unrepresentative Craigslist advertisement could have possibly come to the conclusion that racial discrimination was either intended or inferred.   Given the building demographics, members of minority groups obviously did not perceive the Craigslist advertisement as precluding them from applying to the Sandcastle.  In fact, *not one* individual affiliated with the Fortune Society or any individual Plaintiff has claimed the advertisement constituted race based discrimination or in any other way deterred them from applying for housing.

---

[5] The analysis in this section applies to Second Cause of Action under the New York State Executive Law, §296(5)(a)(3), Exhibit F, Amended Complaint, ¶141(c) and the Third Cause of Action under the New York City Administrative Code and Charter,  ¶8-107(5)(a)(3), Exhibit F, Amended Complaint, ¶145(c).

8

None of the Plaintiff's agents was even aware of the advertisement until discovery in this matter took place.

### The Declaration of Donald Welsch Is Proper In All Respects

Plaintiff seeks to strike the two expert reports and Declaration of Defendants expert Donald Welsch arguing: "There is no question that Welsch's affidavit, first produced to Fortune along with Defendant's summary judgment motion, exceeds the bounds of his prior reports" and is therefore properly excluded.  See Pl. Opp. Brief, page 29-30, see Expert Report of Donald Welsch dated October 7, 2015, Exhibit CC, Expert Report of Donald Welsch dated December 11, 2015, Exhibit DD, Declaration of Donald Welsch dated July 14, 2016.

At the time Mr. Welsch was deposed, Plaintiff's counsel was aware that subpoenas had been served, and documents received in response, that were relevant for analysis by Mr. Welsch.  Those documents are: Census Data for the Sandcastle; documents provided by New York City Planning; a spreadsheet provided by the New York City Human Resources Administration.  See Exhibits D, X and the tables annexed to Exhibits CC and DD.[6] Plaintiff's counsel made the *affirmative decision* not to examine Mr. Welsch on any demographics for the building with the full knowledge that relevant documents had been subpoenaed.   Plaintiff's counsel and Dr. Parnell have always taken the position that actual demographics are irrelevant and continue to assert that position in their motion papers. See Pl. Opp. Brief, page 18, Dep. of Dr. Parnell, Exhibit M , pages 78, 79, Exhibit P, 165, 187, 188, 191, 194, 198, 203, 204.   In fact, when presented with Mr. Welsch's reports at

---

[6] Although included in those exhibit tabs, the tables were not incorporated into either the initial report of Donald Welsch or his supplemental report.   The tables have been included with the reports to try to simplify the record submitted in support of our motion.

9

deposition, Dr. Parnell criticized Mr. Welsch for focusing solely on the Sandcastle and its surrounding community.  Id., Exhibit M, page 78-79.

Accordingly, Plaintiff's counsel made the *affirmative decision* to forego examination of our expert on Sandcastle demographics in relation to the census data, neighborhood and borough.

All of the conclusions contained in the Declaration of Mr. Welsch are consistent with both of his reports and his conclusion that Dr. Parnell's two reports do "not provided a basis for determining whether data provided contains any evidence that can be relied upon…that Sandcastle's application process resulted in a disparate impact on the applicants based upon race."  See Exhibit DD, page 2.  Given all of the attestations of Mr. Welsch in his Declaration are consistent with the findings in his two reports, the Court should decline to strike his Declaration.

## Conclusion

For the reasons stated in all the papers filed in support of our motion for summary judgment, we respectfully submit that summary judgment is properly entered in favor of Defendants on all causes of action and the application of the Plaintiff's denied.

Dated:    New York, New York
          September 27, 2016

                                        By: _____
                                        Thomas D. Shanahan (TS-3330)
                                        Thomas D. Shanahan, P.C.
                                        551 Fifth Avenue, Suite 616
                                        New York, New York 10176
                                        (212) 867-1100, x11

10