UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FORTUNE SOCIETY, INC.<br><br>                Plaintiff,<br><br>v.<br><br>SANDCASTLE TOWERS HOUSING DEVELOPMENT FUND CORP., SARASOTA GOLD LLC, E & M ASSOCIATES LLC, WEISSMAN REALTY GROUP LLC,<br><br>                Defendants. | Civil Action No.: 1:14-cv-6410<br><br>Magistrate Judge Vera M. Scanlon |

**BRIEF IN RESPONSE TO THE SUBMISSION
OF THE UNITED STATES OF AMERICA**

Dated: New York, New York
       October 31, 2016

_____
Thomas D. Shanahan (TS-3330)
Thomas D. Shanahan, P.C.
551 Fifth Avenue, Suite 616
New York, New York 10176
(212) 867-1100, x11
tom@shanahanalaw.com

Table of Contents
Table of Authorities ............................................................................................................................. i
Introduction .......................................................................................................................................... 1
Plaintiff's Counsel's Spreadsheet Proves The Sandcastle's Subjective Policy ........................... 3
The Government and Plaintiff Failed to Argue Retroactive ........................................................ 5
Application of the HUD Guidance ................................................................................................... 5

*Table of Authorities*

Cases
Betsey v. Turtle Creek Assocs., 736 F.2d 983 (4th Cir. 1984) ..................................................... 2
Cabrera v. Fischler, 814 F. Supp. 269 (E.D.N.Y. 1993) ................................................................ 5
Connecticut v. Teal, 457 U.S. 440, 456 (1982) ............................................................................... 2
Green v. Mo. Pac. R.R. Co., 549 F.2d 1158 (8th Cir. 1977) .......................................................... 3
Griggs v. Duke Power Co., 401 U.S. 424 (1971) ............................................................................ 3
Inclusive Communities v. Texas Dept. of Hsg. and Comm. Affairs, 2016 WL 4494322 (N.D. TX 2016)
    ......................................................................................................................................................... 2
Landgraf v. Usi Film Prods., 511 U.S. 244 (1994) ......................................................................... 5
Meacham v. Knolls Atomic Power Lab, 554 U.S. 84, 100 (2008) quoting Smith v. City of Jackson,
    544 U.S. 228, 241 (2005) ............................................................................................................ 2

*Introduction*

The purported *amicus* brief submitted by the United States of America (hereinafter "Government") bears no semblance of impartiality and is more akin to an intervenor's[1] memorandum of law in further support of Plaintiff's motion for summary judgment. During a conference call on October 24, 2016, counsel for the Government denied that their brief was intended to support Plaintiff's position, after Defendants' counsel pointed out that the Government appeared to adopt the facts and statistics as set forth by Plaintiff. An article published in the Washington Post on October 27, 2106 contradicts the Government's denials and indicates that the Government is supporting Plaintiff's position.[2] See Exhibit LL. The public statements confirm that rather than an *amicus* brief, the Government is in essence intervening without leave, and after the appropriate period to request leave has passed.

Notwithstanding the foregoing and pending summary judgment and *Daubert* motions, the Government chose to adopt the facts as asserted by the Plaintiff and rely on Dr. Parnell's junk science analysis. In doing so, the Government took it upon itself to decide the pending motions. The Government's conduct is both procedurally and substantively improper and, to the extent it adopts facts that remain in dispute in the pending motions, properly rejected.[3]

On page 11 of its brief, the Government states: "Although the United States takes no position on whether there are sufficient undisputed facts necessary to prove plaintiff's *prima facie* case at the summary judgment stage of this case, *we note that defendants have put forward several*

---

[1] It is undisputed that the Government never sought leave to intervene in this proceeding.

[2] "But last week, the Justice Department took action against this form of rental discrimination when it joined the Department of Housing and Urban Development in a case alleging housing bias against the convicted. Justice officials argue that blanket bans on renting to people with criminal records "that do not consider when the conviction occurred, what the underlying conduct entailed, or what the convicted person has done since then run a substantial risk of having a disparate impact based on race or national origin." The agencies are supporting the Fortune Society in New York, which works with the formerly incarcerated."

[3] This includes the following sections of the Government's brief: "statement of facts" and substantive arguments on pages 3, 4, 5, 11 to 19.

*specious arguments in challenging plaintiff's satisfaction of the prima facie case."* See Brief of U.S., Docket 102, page 11 (emphasis supplied). The Government then does the *exact opposite* and applies the Plaintiff's version of disputed facts to three critical areas of this case, *deciding the factual disputes in favor of the Plaintiff.*

The Government states: "Defendants wrongly rely on an analysis about the demographics of the tenants currently in the complex." Id., page 11. The Government incorrectly cites to Connecticut v. Teal, 457 U.S. 440, 456 (1982), and Betsey v. Turtle Creek Assocs., 736 F.2d 983 (4th Cir. 1984), in support of their argument that building demographics are irrelevant. In Teal and Betsey, there was no factual dispute on the specific policy at issue. In Teal, the policy was a civil service exam, which had nothing to do with actual job requirements. In Betsey, it was a clear and undisputed zoning ordinance. Id., Teal, at 456, Betsey, at 987-988. The Government's entire analysis on pages 11 and 12 of their brief *is only relevant should this Court factually determine that a blanket ban exists.*

Should it be determined that a blanket ban does not exist the Government's entire argument is moot. See Def. Opp. Br., pages 6-12, *citing* Inclusive Communities v. Texas Dept. of Hsg. and Comm. Affairs, 2016 WL 4494322 (N.D. TX 2016),[4] annexed as Exhibit MM, page 13, (Dismissing disparate impact claims and holding that Texas properly utilized its discretion in awarding housing grants and dismissing Plaintiff's claim for failure to demonstrate robust causality). The Texas District Court on remand from the Fifth Circuit held the first prong to establish a *prima facie* case is to clearly identify the facially neutral policy subject to challenge. Id., citing Meacham v. Knolls Atomic Power Lab, 554 U.S. 84, 100 (2008) quoting Smith v. City of Jackson, 544 U.S. 228, 241 (2005). As the Texas District Court noted: "This is not a trivial burden".

---

[4] The Government failed to cite to this case in its brief.

2

Id., 14. Herein, the Plaintiff continues to assert a blanket ban[5] exists despite substantial evidence to the contrary. This is not by accident but rather by design.

Absent a blanket ban, this Court must look to the demographics of the Sandcastle, including the overall racial demographics, the number of individuals living in the Sandcastle with convictions and comparative data for community surrounding the Sandcastle. See Def. Summ. Jud. Br., pages 13, 14, citing Green v. Mo. Pac. R.R. Co., 549 F.2d 1158 (8th Cir. 1977) and Griggs v. Duke Power Co., 401 U.S. 424 (1971). In fact, Dr. Parnell confirmed that his reports are only relevant if a blanket ban is, and has been, in place. See Def. Sum. Jud. Br., page 4-5, Def. Ex. P, pg. 201. Given the policy at the Sandcastle has yet to be determined and is *the* fundamental issue in dispute, the Government's position is wholly improper.

*Plaintiff's Counsel's Spreadsheet Proves The Sandcastle's Subjective Policy*

The Government conveniently ignores the full spreadsheet created by *Plaintiff's counsel* that constitutes *dispositive evidence* of a subjective policy. Rather than review this critical evidence the Government simply chose to ignore it. It then states: "Defendants wrongly state the plaintiff needs to demonstrate that defendants applied their criminal records ban in every instance in order to prove a blanket ban." See Brief of U.S., at 12. This is not our argument and never has been. Rather, we repeatedly argue, in all submissions to the Court, that the evidence of tenants with both misdemeanor and felony convictions living in the Sandcastle confirms the subjective policy that is substantiated by the testimony of Rose Campbell and Struly Tress. See Def. Sum. Jud. Br., pgs. 12-17, 19, 20, Def. Opp. Br., pgs. 7-11, 13, Def. Reply Br., 2-8. Plaintiff continues to argue that the twenty known tenants with conviction records are too few for a building the size of the Sandcastle. This argument fails to take into account that the records are

---

[5] Even though their expert Dr. Parnell modified the existing policy throughout the pendency of this litigation to conform with discovery, no blanket ban exists. See Def. Sum. Jud. Br. Pages 8, 9, citing Def. Ex. P, pages 239-240.

3

incomplete and these are the only *known* residents who have records of a criminal conviction in their tenant file. We believe there to be substantially more although no records exist to prove this. Irrespective, when Dr. Parnell was asked at his deposition how many individuals a building the size of the Sandcastle *should* have, he confirmed he did not know. Def. Ex. P, pg. 136. When asked who would know, Dr. Parnell testified he had no idea. Id. The reality is neither Plaintiff nor their expert have a clue what the number should be. Dr. Parnell could not even state what the demographics of the building would be if his theory were correct or how it would differ from its current demographics.

A full list of tenants who either currently reside in the Sandcastle or have since 2006 with known conviction records or whose file contained such information in order to discern whether a criminal record existed is annexed as Exhibit NN. A partial list of rejected applicants is annexed as Exhibit OO. A full list of all rejected applicants reflected on the spreadsheet prepared by *Plaintiff's counsel* is annexed as Exhibit PP.[6] A review of the criminal records in the accepted and rejected categories demonstrates that decisions are being made on a case-by-case basis.[7] In fact, many of the individuals identified on the rejected list have criminal convictions for manufacture or distribution of controlled substances. See Def. Sum Jud. Br., pg. 16, Exhibit GG, pg. 8. These individuals are exempted from any protection under the Fair Housing Act as confirmed by the HUD Guidance issued on April 7, 2016. See Exhibit GG, pg. 8.[8]

The substantial number of rejected applicants is important for another reason. The sheer number of rejected applicants with conviction records clearly contradicts the Plaintiff's assertions,

---

[6] Exhibit PP is compiled from Pl. Ex. 18, sub ex. 1, Columns 1152- 1278, A-G.
[7] Given the page limitation for this response, we do not conduct a full evaluation of each applicant. However, clearly the type of offenses and sheer number per individual are substantially different on the accepted and rejected lists.
[8] The Plaintiff and its expert Dr. Parnell simply ignore the type of offense and the impact this may have on their analysis. The Government simply ignores this critical point as well.

4

adopted by the Government, that the Sandcastle "described their [blanket ban] policy in categorical terms in advertisements and communications with applicants."[9] There was no "chilling effect" because applicants with criminal records still continued to apply for apartments; that argument is without support in the record.

*The Government and Plaintiff Failed to Argue Retroactive*

*Application of the HUD Guidance*

The Government fails to argue that the HUD Guidelines should be applied retroactively but states: "Liability would be based on plaintiff proving defendants themselves imposed a policy of considering criminal records in a non-individualized manner and that the policy had an unjustified discriminatory impact on African-Americans and Hispanics." See Brief of U.S., at 13. This Court should defer to the Defendants' prudent exercise of discretion, as evidenced by the spreadsheet created by Plaintiff's counsel and uncontroverted testimony, for the period 2006 to April 7, 2016, the date the HUD Guidance was issued. The Guidance is *silent* as to retroactive application and, rather than a statutory amendment of the Fair Housing Act by Congress, the HUD Guidance is simply that: *guidance* to be applied prospectively. It is well settled that retroactive application is precluded absent the specific intent and authorization of Congress or certain factors not relevant herein. See Landgraf v. Usi Film Prods., 511 U.S. 244 (1994) and Cabrera v. Fischler, 814 F. Supp. 269 (E.D.N.Y. 1993). Contrary to the Government's unsupported argument, the standards to impose liability would be based upon the state of the law prior to the issuance of the HUD Guidance earlier this year.

---

[9] See Brief of U.S. at 13. For a period of a decade the only "proof" of this blanket statement is one Craigslist advertisement, posted by Rose Campbell when she was relatively new and which we admit was not accurate. Rather than "pattern and practice" as argued by the Government, this one mistake should be treated as a "stray remark" as that term is defined in discrimination law. See Def. Opp. Br., pages 22-25.

5

Dated: New York, New York
October 31, 2016

_____
Thomas D. Shanahan
Thomas D. Shanahan, P.C.
551 Fifth Avenue, Suite 616
New York, New York 10176
(212) 867-1100, x11
Fax (212) 972-1787

6