## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FORTUNE SOCIETY, INC.<br>29-76 Northern Blvd<br>Long Island City, NY 11101<br><br>    Plaintiff,<br><br>  v.<br><br>SANDCASTLE TOWERS HOUSING<br>DEVELOPMENT FUND CORP.<br>1465A Flatbush Ave.<br>Brooklyn, NY 11210<br><br>SARASOTA GOLD LLC<br>1407 48th Street<br>Brooklyn, NY 11219<br><br>E & M ASSOCIATES LLC<br>1465A Flatbush Ave.<br>Brooklyn, NY 11210<br><br>and<br><br>WEISSMAN REALTY GROUP LLC<br>45 Broadway, 12th Floor<br>New York, NY 10006<br><br>    Defendants. | Civil Action No. 1:14-cv-6410<br><br>Magistrate Judge Vera M. Scanlon<br><br>Oral Argument Requested |

**PLAINTIFF'S REPLY TO DEFENDANTS' AMENDED RESPONSE TO PLAINTIFF'S REVISED RULE 56.1 STATEMENT**

# **DEFINITIONS**

1. "P SJ Br.": Revised Brief in Support of Plaintiff The Fortune Society, Inc.'s Motion for Partial Summary Judgment Against Defendants Sarasota Gold, LLC, Sandcastle Towers Housing Development Fund Corporation, and E & M Associates, LLC, and to Exclude Rebuttal Expert Reports. Doc. 94-1.

2. "P SJ Opp.": Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and to Exclude Expert Reports. Doc. 98.

3. "SOF": Plaintiff's Revised Statement of Material Facts as to which There Is No Genuine Issue to Be Tried Pursuant to Local Rule 56.1(b). Doc. 94-2.

4. "Resp.": Defendant's Amended Response to Plaintiff's Revised Rule 56.1 Statement. Doc. 131.

Defendants have amended their Response to the Rule 56.1 Statement ("Resp.") submitted by Plaintiff Fortune in support of its motion for partial summary judgment. Doc. 131. Pursuant to the Court's Order (Doc. 130 at 5), Fortune addresses Defendants' main additions below to the extent they are not addressed in Fortune's prior briefs. Fortune is entitled to summary judgment on its disparate impact claims because there remains no genuine dispute as to the material facts.

I.      **There Is No Genuine Dispute That Defendants Maintain a Blanket Ban**

Fortune has shown through overwhelming evidence that Defendants maintain a blanket ban against renting to people with criminal records (save traffic misdemeanors). SOF ¶¶ 96-146. Defendants now cite additional testimony from Sruly Tress and Rose Campbell that they claim creates a genuine dispute. *E.g.*, Resp. ¶¶ 110, 129, 137. It fails to do so for two reasons.

First, the testimony is contradicted by the documentary evidence, including Defendants' numerous public written pronouncements that people with criminal records are not accepted; their own tenant files; and their sworn interrogatory responses. SOF ¶¶ 96-146. As the Supreme Court has held, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). That is the case here.

Second, at most, the added testimony implicates only misdemeanors. *E.g.* Resp. ¶ 110; Ex. 2 at 73:16-21. As previously shown, Defendants' blanket exclusion of people with felonies independently violates the Fair Housing Act ("FHA"). P SJ Br. at 30-32; P SJ Opp. at 31-33. It is beyond dispute that Campbell—who runs the application process and rejects applicants on her own—implements an absolute felony ban. SOF ¶¶ 48-53, 67, 124-129, 137; Ex. 2 at 124:25-125:9. The new testimony casts no doubt on this. Campbell's boss, Tress, is barely involved

1

(Resp. ¶¶ 48-50), but Defendants now place great weight on his "belie[f]" that applicants with past felonies are considered "case by case." Resp. ¶¶ 96, 129; Ex. 10 at 133:10-13. Yet Tress' own testimony shows that his belief is baseless. When asked to support his claim, he acknowledged that he did not know the difference between a felony and a misdemeanor before this litigation; stated it was merely "possible" that an applicant with a felony "may have been" given consideration; and ultimately answered "I don't know" when asked if there were any tenants admitted despite a past felony conviction. Ex. 10 at 130:16-133:3; *see also id*. at 134:13-135:20. This is a textbook example of why a mere unsupported "belief" is not sufficient to create a genuine dispute and defeat a summary judgment motion. *Gorham v. Town of Trumbull Bd. of Educ*., 7 F. Supp. 3d 218, 235 (D. Conn. 2014); *Fernandors v. D.C.*, 382 F. Supp. 2d 63, 70 (D.D.C. 2005); *accord Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[S]ummary judgment cannot be defeated on the basis of conjecture or surmise."). There is no genuine dispute that Defendants maintain a felony ban. Thus, Fortune is entitled, at a minimum, to summary judgment as to this practice.

## II.    There Is No Genuine Dispute About the "No Criminal Background" Statements

There is also no genuine dispute about what Defendants have stated to prospective applicants through advertisements and emails. SOF ¶¶ 96-114. As Fortune has already shown, these statements constitute an independent violation of the FHA's prohibition on discriminatory "notice[s], statement[s], or advertisement[s]" pursuant to 42 U.S.C. § 3604(c). P SJ at 34-35. For example, Defendants ran online ads indicating that applicants with criminal histories should not apply, which were authorized and widely seen. None of this is disputed. Resp. ¶¶ 96-114. And Defendants cite no evidence disputing that Fortune was told the same thing. Resp. ¶¶ 291-93. This practice independently violates § 3604(c) regardless of how Sand Castle actually treated

2

any applicants with records who applied despite the stated blanket ban. Thus, at a minimum, Fortune is also entitled to summary judgment on its 3604(c) claims.

### III.     Defendants' New Objection to Fortune's Expert Reports Is Baseless

Fortune's experts establish that: Defendants' criminal records policy disproportionately prevents minorities from living at Sand Castle; the policy is not necessary to achieve a legitimate business purpose; and individualized consideration would adequately serve any legitimate purpose. *Compare* SOF ¶¶ 179-271 *with* Resp. ¶¶ 179-271. Defendants now claim that the reports are inadmissible hearsay because they are unsworn. *E.g.*, Resp. ¶ 192. But that is wrong.[1]

### IV.     Fortune's FRE 1006 Declaration and Spreadsheet Are Admissible

Fortune submitted a detailed declaration, in accordance with Fed. R. Evid. 1006, which includes a spreadsheet summarizing over 20,000 pages of application materials obtained from Defendants and, to a lesser extent, from their real estate agent and their background report vendor. The files reviewed confirm that Defendants do not allow people with records at the Sand Castle. As they have before, Defendants contend in their new submission that the declaration is inadmissible and should not be considered. *E.g.*, Resp. ¶ 136. But as previously shown, the creation and use of this declaration is proper. Doc. 77 at 2-8; P SJ Opp. at 24. (Of course, if the Court would like to review these voluminous application materials, Fortune will file them).

Moreover, Defendants have waived this objection by consistently relying on the spreadsheet themselves (albeit inaccurately). *See Capobianco*, 422 F.3d at 55 ("[D]efendants waived any objections to the admissibility of the reports by offering them themselves."); *Polanco*

---

[1] Dr. Kazemian's report is sworn. Ex. 22 at 6. Drs. Parnell and Wildeman executed sworn declarations incorporating their reports (and were deposed). Ex. 21 at 4; Ex. 51 at 7; *see Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (affidavit cures unsworn expert report); *Brenord v. Cath. Med. Ctr.*, 133 F. Supp.2d 179, 183 n.1 (E.D.N.Y. 2001) (same). Dr. Kazemian's declaration, signed in May 2016, is attached here because it was inadvertently omitted previously. Ex. 101. The attachments to the Parnell and Wildeman declarations were independently filed as Exs. 23, 24, and 27, but not attached to their declarations. For clarity's sake, the declarations with the attachments are refiled here as unified documents. Exs. 102, 103. This refiling does not alter the record.

*v. Active Retirement Cmty., Inc.*, 2016 WL 792408, at *3 (E.D.N.Y. 2016) (same). Defendants attached the spreadsheet as an exhibit to both their own summary judgment motion and their opposition to Fortune's. Docs. 97-1 at 14-15; 97-2 at ¶ 59; 97-21; 97-22; Doc. 95 at 8-11 ("[T]he spreadsheet created by Plaintiff's counsel is dispositive."). Indeed, other than the spreadsheet they seek to exclude, Defendants have proffered no documentary evidence that they allow people with any sort of criminal history, even a traffic violation, to live in their building.

In addition, the declaration facially disproves Defendants' claims about "arbitrary database searches" and alteration of "original records." Resp. ¶ 136. Defendants, of course, are entitled to highlight *actual* flaws and inaccuracies in the spreadsheet. They have never done so.[2]

## V.     Defendants' Additional Evidentiary Objections Are Meritless

Unable to dispute the material facts with evidence, Defendants' new submission also adds formalistic evidentiary objections to 20 of Fortune's 90 exhibits based on foundation, authentication, and hearsay.[3] *E.g.*, Resp. ¶ 97. But "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Eka v. Brookdale Hosp.*, 247 F. Supp.3d 250, 260 n.11 (E.D.N.Y. 2017) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). Thus, hearsay and unauthenticated evidence "is admissible at the summary judgment stage if the contents would otherwise be admissible at trial." *Lopez v. Mathely*, 2015 WL 1447143, at *7 (N.D.N.Y. 2015); *accord Rivera*

---

[2] Defendants also argue that the declaration should have used the term "applicant files" instead of "tenant files." Maybe so, but it is obvious what the declarant meant and which documents are at issue (*see* Ex. 18 at, *e.g.*, ¶¶ 10, 11, 14, 25). And they assert that the spreadsheet "is partial and incomplete" (Resp. ¶ 136), but that is because the data itself is incomplete, as Fortune has stated consistently, *e.g.*, SOF ¶ 134, because Defendants did not diligently maintain their records. What matters is that the hundreds of applications and background checks that are available serve to confirm Defendants' criminal records policy. Finally, Defendants again mischaracterize Dr. Parnell's reliance on the spreadsheet. Resp. ¶ 133. He did not find that it was unreliable; rather he found that, for his purposes, the underlying data had limited utility due to incompleteness. Ex. 24; SOF ¶¶ 223-26; P SJ Opp. at 21-23.

[3] They are, in whole or in part, Exhibits 2, 10, 14, 17, 18-20, 22-24, 27, 28, 30, 45-47, 49, 50, 62, and 75.

4

*v. Lopez*, 67 Fed. Appx. 651, at *2 (2d Cir. 2003). Defendants make boilerplate objections, but offer no reasons why these formalities would not be easily addressed at trial. There are none. Defendants object to, *inter alia*, emails written by their own employees, applicant documents they produced in discovery, and even their own Nominee Agreement (upon which they also rely, Doc. 97-2 at ¶ 3). Resp. ¶¶ 21, 96, 141. Because there is no question that Fortune could offer these materials and/or their content in admissible form, "there is no practical need to comply with such formalities" on summary judgment. *Rosenthal v. Nierenberg*, 2010 WL 3290994, at *2 n.2 (S.D.N.Y. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). And "[r]efusing to consider [these] exhibits now would strip summary judgment of one of its principal purposes to isolate and dispose of factually unsupported claims or defenses." *Parks v. Blanchette*, 144 F. Supp.3d 282, 293-94 (D. Conn. 2015) (internal punctuation omitted).

Even cursory scrutiny shows that Defendants' objections are baseless. For example, there is ample foundation for the Craigslist ad authorized by Tress (*e.g.*, Ex. 10 at 153:22-155:19; Ex. 2 at 170:12-171:4) and, as the statement of a party opponent, it is not hearsay. Resp. ¶¶ 96-99. Emails sent by Defendants' own agents will be authenticated by their testimony. Resp. ¶ 111; *see* Ex. 2 at 156:7-21. Background checks and other application materials are business records kept by Defendants or their vendors and will be authenticated by Campbell or others. Resp. ¶ 86; Ex. 2 at 225:25-228:3; Ex. 10 at 125:16-126:7. Defendants even object to sworn declarations from Fortune employees that are explicitly premised on their personal knowledge. *E.g.* Resp. ¶ 292. Space limitations preclude Fortune from addressing each evidentiary objection in full, but Fortune will submit a point-by-point response should the Court think it necessary or useful.

## CONCLUSION

Fortune should be granted summary judgment on its disparate impact claims.

Respectfully submitted,

/s/ Ryan C. Downer
Ryan C. Downer (RD3249)
John P. Relman, admitted *pro hac vice*
Glenn Schlactus, admitted *pro hac vice*
Jia Cobb, admitted *pro hac vice*
RELMAN, DANE & COLFAX, PLLC
1225 19th St., NW, Suite 600
Washington, D.C. 20036-2456
Tel: 202-728-1888
Fax: 202-728-0848
E-mail: rdowner@relmanlaw.com
jrelman@relmanlaw.com
gschlactus@relmanlaw.com
jcobb@relmanlaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 4th day of April, 2018, a true and correct copy of the foregoing Plaintiff's Reply to Defendants' Amended Response to Plaintiff's Revised Rule 56.1 Statement was filed electronically by CM/ECF with the Clerk of Court for the Eastern District of New York, and served on all counsel of record through same.

/s/ Ryan C. Downer  
Ryan C. Downer
